UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPH T. MIMMS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 1:13-cv-894-TAB-JMS ) ) |
| CAROLYN W. COLVIN, ACTING COMMISIONER OF SOCIAL SECURITY | ) ) ) ) |
| Defendant. | ) ) ) |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.     Introduction**

Plaintiff Joseph Mimms appeals the Administrative Law Judge's denial of his Social Security application for disability insurance benefits. Mimms' alleged impairments include avascular necrosis in his hips, leading to the replacement of both hips, knee injuries, high blood pressure, diabetes, gout, carpal tunnel syndrome, and pain. [Filing No. 18, at ECF p. 2; Filing No. 15-6, at ECF p. 6.] Mimms raises three issues on appeal: (1) whether the Appeals Council committed an error of law because it failed to properly consider additional evidence from Mimms' treating orthopedic surgeon, Dr. David Graybill; (2) whether the ALJ failed to give adequate weight to the opinions of Dr. Graybill; and (3) whether the ALJ's credibility finding is patently wrong. [Filing No. 18, at ECF p. 1-2.] For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

**II.     Background**

Mimms alleges he became disabled on September 14, 2009. On June 27, 2012, the ALJ held a hearing and found that Mimms' impairments did not meet or equal listings 1.02, 1.03,

1

1.04, 14.06, or 14.09. [Filing No. 15-2, at ECF p. 22, 25-26.] However, the ALJ found that Mimms could not perform any relevant past work, and the ALJ limited Mimms to sedentary work with additional limitations. [Filing No. 15-2, at ECF p. 26-31.] The ALJ determined that Mimms was more disabled than the state agency medical consultants recommended based on the evidence from Mimms' treating physicians. Nevertheless, the ALJ did not find all of Mimms' complaints to be credible. Ultimately, the ALJ determined Mimms was not disabled within the meaning of the Social Security regulations. [Filing No. 15-2, at ECF p. 33.]

On November 13, 2012, Mimms submitted an application for reconsideration to the Appeals Council. [Filing No. 15-2, at ECF p. 15-18.] In his application for reconsideration, Mimms included an April 9, 2012, chart note and a June 20, 2011, letter from Dr. Graybill documenting severe problems with Mimms' hips and knees. Neither of these documents was part of the record for the ALJ. The Appeals Council denied review of Mimms' case stating, "we considered the reasons you disagree with the decision stated in your Request for Review of Hearing Decision/Order and the additional evidence listed on the enclosed Order of Appeals Council. . . . We found that this information does not provide a basis for changing the Administrative Law Judge's decision." [Filing No. 15-2, at ECF p. 2-3.] This appeal followed.

### III. Discussion

*A. Standard of Review*

The Social Security regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled: whether the plaintiff (1) is not engaged in substantial gainful activity or employment, (2) has a severe impairment, (3) has an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations, (4) is unable to perform his past relevant work, and (5) is unable to perform any other work in the national

economy. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868.

The Court must uphold the ALJ's decision if substantial evidence supports her findings. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003). The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ, however, need not mention every piece of evidence, so long as she builds a logical bridge from the evidence to her conclusion. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

  B. *Appeals Council Determination*

Mimms argues that the Appeals Council committed legal error by rejecting additional evidence from Mimms' treating physician, Dr. Graybill. Mimms' additional evidence includes a June 20, 2011, letter [Filing No. 15-12, at ECF p. 61-62] and an April 9, 2012, chart note. [Filing No. 15-12, at ECF p. 57-58.] Mimms contends that this evidence would change the ALJ's RFC determination. In rejecting this evidence, Mimms asserts that the Appeals Council erroneously used boilerplate language. [Filing No. 18, at ECF p. 17.] Accordingly, the Court

3

should review the additional evidence *de novo* under *Farrell v. Astrue*, 692 F.3d 767 (7th Cir. 2012).

The Commissioner contends that *de novo* review is not required because the Appeals Council considered Mimms' post-decision evidence as new and material. However, the Appeals Council denied his appeal in accordance with the Social Security Administration's Hearings, Appeals and Litigation Law Manual (HALLEX). [Filing No. 27, at ECF p. 11.] Even if the Appeals Council erred in considering Mimms' additional evidence, the Commissioner argues that any error is harmless, and the denial of Mimms' appeal should be affirmed.

The issue of whether an ALJ's decision is supported by substantial evidence is distinct from whether the Appeals Council properly rejected an appeal. *Farrell*, 692 F.3d at 770-71. To review additional evidence, the Appeals Council must determine whether the evidence is new and material:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ] hearing decision. It will then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). A district court may review *de novo* whether the Appeals Council made an error of law in applying this regulation. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997). If an error of law exists, then remand may be appropriate; otherwise, "the Council's decision whether to review is discretionary and unreviewable." *Id.* While this Court cannot use evidence that was not before the ALJ to reevaluate the ALJ's factual findings, remand may still be appropriate if the Appeals Council made an error of law. *Farrell*, 692 F.3d at 770-71.

In denying Mimms' motion for reconsideration, the Appeals Council indicated that it "considered . . . the additional evidence . . . . [And] found that this information does not provide a basis for changing the Administrative Law Judge's decision." [Filing No. 15-2, at ECF p. 2-3.] *Farrell* found this language to be boilerplate as it was unclear whether the Appeals Council determined that the additional evidence was immaterial, or material but insufficient to require a different result. 692 F.3d 767, 771 (7th Cir. 2012). Accordingly, *Farrell* interpreted this language to mean that the Appeals Council "ha[d] rejected [the] new evidence as non-qualifying" because it was not new and material. *Id.; See also DeGrazio v. Colvin*, 558 F. App'x 649 (7th Cir. 2014) ("Although the wording of this explanation might give the impression that the Appeals Council *did* consider the [additional evidence] . . . this language is boilerplate and actually means that the Appeals Council decided that the evidence is not 'new and material' and, thus, *did not* consider it.").

The Commissioner concedes that the April 9, 2012, chart note and the June 20, 2011, letter are new and material. However, the Commissioner argues that the Appeals Council properly set forth its rejection under HALLEX I-3-5-20, Section B. [Filing No. 27, at ECF p. 14.] But HALLEX is not authoritative, and the Court must review Mimms' evidence *de novo* to determine whether the Appeals Council erred in failing to consider Mimms' additional evidence.

In order for evidence to be added to the record on reconsideration, it must qualify as both new and material. Evidence is considered new if it is new to the administrative record. *Farrell*, 692 F.3d at 771 (examining whether a doctor's "diagnosis was 'new' to the administrative record at the time of [claimant's] application to the Appeals Council."). The parties agree that the April 9, 2012, chart note and the June 11, 2011 letter are new to the administrative record as neither of these reports were before the ALJ. Evidence is material when it is relevant to the claimant's

condition during the application time period. *Bergmann v. Apfel*, 207 F.3d 1065, 1069-70 (8th Cir. 2000); *Aulston v. Astrue*, 277 F. App'x 663, 664 (8th Cir. 2008). The additional evidence must not merely detail the post-decision deterioration of a condition or newly acquired conditions. *Bergmann*, 207 F.3d at 1069-70; *Aulston*, 277 F. App'x at 664. Rather, the evidence must fill in an evidentiary gap. *Farrell*, 692 F.3d at 771.

The Commissioner admits that Dr. Graybill's chart note and letter are material for purposes of Appeals Council review. [Filing No. 27, at ECF p. 14.] The Court agrees. It is clear that the April 9, 2012, chart note and the June 20, 2011, letter are relevant to Mimms' condition for the applicable time period. Both documents are dated before the ALJ's decision of September 27, 2012. [Filing No. 15-2, at ECF p. 33.] Moreover, Dr. Graybill's medical documents contradict evidence on which the ALJ's RFC determination rests. For instance, the ALJ found that Mimms' was capable of sitting for thirty minutes at a time. [Filing No. 15-2, at ECF p. 26.] Meanwhile, Dr. Graybill's chart note indicated that Mimms was only capable of sitting or standing for fifteen minutes without significant pain, and has a thirty to sixty minute threshold with severe pain. [Filing No. 15-12, at ECF p. 57.] Further, the ALJ based part of her RFC determination on the premise that the cortisone injections were helping Mimms' condition, whereas Dr. Graybill remarked that "[t]he injections are not helping [Mimms'] knees much." [Filing No. 15-2, at ECF p. 29, 31; Filing No. 15-12, at ECF p. 57.] The ALJ also found that Mimms did not have crepitus in his knees, but Dr. Graybill's June 11, 2011, letter showed that crepitus was present in Mimms' knees. [Filing No. 15-2, at ECF p. 29; Filing No. 15-12, at ECF p. 61.] These medical findings by Dr. Graybill call into question the ALJ's RFC determination, and therefore are material.

6

The Commissioner asserts that any error committed by the Appeals Council is harmless because the ALJ's decision is not contrary to the weight of the evidence. [Filing No. 27, at ECF p. 14-15.] But, the medical findings by Dr. Graybill in his April 9, 2012, chart note and his June 20, 2011, letter are at odds with the ALJ's conclusions, and the Court is not convinced the ALJ would reach the same conclusions on remand. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (holding that the Court "will not remand a case to the ALJ for further specification where [the Court is] convinced that the ALJ will reach the same result"). The ALJ determined that Mimms' knees responded well to treatment and determined that Mimms' had no crepitus in his knees. [Filing No. 15-2, at ECF p. 31.] Further, the ALJ limited the amount of time that Mimms' was able to sit to thirty minutes at a time. [Filing No. 15-2, at ECF p. 30.] The April 9, 2012, chart note and June 20, 2011, letter contradict these findings and they suggest that Mimms' capabilities are significantly more limited than the ALJ determined. [Filing No. 15-2, at ECF p. 26, 57; Filing No. 15-12, at ECF p. 57.] Thus, the ALJ's RFC determination must be revisited to account for Dr. Graybill's additional documentation.

The Commissioner advances two additional arguments for disregarding Dr. Graybill's additional evidence. First, the Commissioner argues that Dr. Graybill did not provide a medical opinion but merely recited Mimms' subjective complaints. [Filing No. 27, at ECF p. 16.] Secondly, the Commissioner asserts that Dr. Graybill failed to support his conclusion that Mimms' condition had worsened with medical evidence. [Filing No. 27, at ECF p. 16.]. The Court finds these arguments unpersuasive. Dr. Graybill's opinions are more than a mere recitation of Mimms' complaints. Rather, Dr. Graybill's diagnoses are supported by medical evidence and an established treating relationship with Mimms. Dr. Graybill has treated Mimms for over three years, and in that time he has had at least twenty appointments with Mimms. [*See,*

*e.g.*, Filing No. 15-11, at ECF p. 65-66; Filing No. 15-12, at ECF p. 2-3, 61-62.] Moreover, Dr. Graybill has administered fifteen shots of cortisone and ordered at least six MRIs and X-rays to review Mimms' condition. [*See, e.g.*, Filing No. 15-8, at ECF p. 4, 16, 71; Filing No. 15-10, at ECF p. 3, 9-10, 18-19.] The June 20, 2011, letter states that Dr. Graybill ordered two views of the right hip and three views of the left hip. [Filing No. 15-12, at ECF p. 61.] The April 9, 2012, chart note indicates that Dr. Graybill reviewed images of Mimms' hips and knees. [Filing No. 15-12, at ECF p. 57.] Dr. Graybill planned to order images of Mimms' hips and knees at Mimms' next visit in order to monitor Mimms' conditions. [*Id.* at 57-58.] Thus, the Appeals Council erred in failing to review the additional evidence from Dr. Graybill on appeal, and remand is appropriate on this issue.

    C.    Dr. Graybill's Opinions

Mimms also claims that the ALJ did not give controlling weight to Dr. Graybill's opinions. [Filing No. 18, at ECF p. 19.] The Commissioner responds by arguing that Mimms failed to meet the duration requirement for disability benefits. [Filing No. 27, at ECF p. 19.] The ALJ makes no such finding in her opinion. Thus, this argument is post-hoc rationalization by the Commissioner, and the Court will not consider it. *See* SEC v. Chenery, 318 U.S. 80, 87-88 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("[T]he *Chenery* doctrine . . . forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced."). The Commissioner also argues that Dr. Graybill's opinions all relate to Mimms' ability to do medium level work. Since the ALJ found that Mimms was not capable of medium level work, the Commissioner contends that the ALJ was not required to credit Dr. Graybill's opinions. [Filing No. 27, at ECF p. 20.]

Mimms alleges that three of Dr. Graybill's opinions demonstrate that he was disabled: 1) an October 6, 2009, chart note that stated "he was not ready to return to his fairly moderately active work with frequent lifting" [Filing No. 15-10, at ECF p. 41]; 2) an October 20, 2009, chart note in which Dr. Graybill stated that he "d[id] not think [Mimms] can do his normal work activities" [Filing No. 15-10, at ECF p. 38]; and 3) a March 18, 2010, visit to Dr. Graybill where Dr. Graybill wrote that Mimms "cannot return to his work in his current state . . . [Mimms] is probably going to need to transition to long term disability." [Filing No. 15-10, at ECF p. 14-15.] However, these reports do not warrant remand. While Mimms is correct that the ALJ must give controlling weight to a treating physician's medical opinions, the ALJ is not required to give controlling weight to a treating physician's conclusions regarding a determination of disability or inability to work. 20 C.F.R. § 404.1527(c)(2), (d)(1); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) ("The Commissioner, not a doctor selected by a patient to treat [him], decides whether a claimant is disabled."). Therefore, Mimms' argument that the ALJ needed to give controlling weight to Dr. Graybill's evaluations of Mimms' ability to work fails.

The ALJ gave controlling weight to the medical opinions of Dr. Graybill throughout her opinion. She cited examples of hip and knee pain from Dr. Graybill's records and, as a result, reached the conclusion that additional restrictions to sedentary work are necessary. [Filing No. 15-2, at ECF p. 28-30.] For example, the ALJ mentioned Dr. Graybill's December 14, 2010, report that Mimms "had done very well with the right hip and had only a little bit of trochanteric pain in both hips." [Filing No. 15-2, at ECF p. 29; Filing No. 15-11, at ECF p. 65-66.] The ALJ also considered Dr. Graybill's physical examination that "showed non-irritable hips with full motion" but that "tenderness was present bilaterally." [Filing No. 15-2, at ECF p. 29; Filing No. 15-11, at ECF p. 65.] Similarly, the ALJ reviewed Dr. Graybill's findings regarding Mimms'

knees. She mentioned that Mimms had constant pain in his knees that varied in severity and that Mimms had bilateral knee arthritis. [Filing No. 15-2, at ECF p. 29; Filing No. 15-12, at ECF p. 2-3] The ALJ noted the history of cortisone injections in Mimms' knees, and reported the differing results of the shots. [Filing No. 15-2, at ECF p. 29.] She observed that Mimms found a previous injection helpful. [Filing No. 15-2, at ECF p. 29; Filing No. 15-11, at ECF p. 66.] However, Mimms' most recent injection lasted only one to one-and-a-half months. [Filing No. 15-2, at ECF p. 29; Filing No. 15-12, at ECF p. 2] Ultimately, the ALJ concluded that Mimms could stand or sit for thirty minutes at a time in accordance with Dr. Graybill's March 18, 2010, evaluation. [Filing No. 15-2, at ECF p. 30; Filing No. 15-10, at ECF p. 14-15.] Thus, the ALJ properly weighed the medical opinions of Dr. Graybill and remand is not appropriate on this issue.

  D. *Credibility Determination*

Mimms claims that the ALJ used an incorrect legal standard in establishing Mimms' credibility. He argues that the ALJ imposed an extra-legal requirement on him to verify the limited nature of his daily activities. [Filing No. 18, at ECF p. 20.] The Commissioner contends that the ALJ supported her credibility determination with evidence from the record and that the ALJ's credibility determination was not patently erroneous. [Filing No. 27, at ECF p. 20-22.]

Typically, the ALJ is in the best position to weigh the credibility of a claimant, and the Court reviews any determination deferentially. *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). The Court will uphold a credibility determination unless it is patently wrong. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). If an ALJ used boilerplate language to discuss a claimant's credibility but provided ample evidence to support the findings, the court will uphold the credibility assessment. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) ("If the ALJ

has otherwise explained his conclusion adequately, the inclusion of [boilerplate] language can be harmless.").

The Court agrees with the Commissioner that the ALJ's credibility determination was not patently erroneous. While Mimms is correct that "objective verification" of daily activities is not the correct legal standard, the ALJ did not rely on this standard to make her credibility determination. Rather, the ALJ reviewed Mimms' medical treatment and third-party statements in determining his credibility. She discussed Dr. Graybill's March 2011 evaluation stating that Mimms had full range of motion of both knees with minimal to mild pain, and his hips were doing well. [Filing No. 15-2, at ECF p. 31; Filing No. 15-12, at ECF p. 2-3.] Moreover, Dr. Graybill reported that Mimms' hips had improved, especially after his touch-up surgery to repair a loose cup, and that Mimms' knees had mild to minimal pain. [Filing No. 15-11, at ECF p. 65-66.] The ALJ also considered Dr. Hardacker's opinion that there was no evidence of a back problem that would cause Mimms' chronic pain. [Filing No. 15-11, at ECF p. 3-8.] Mimms' brother testified that Mimms was not able to help with outdoor activities such as mowing grass or shoveling snow, and Mimms' brother estimated that Mimms could only lift about fifteen pounds. [Filing No. 15-2, at ECF p. 27; Filing No. 15-2, at ECF p. 52-53.] Moreover, the ALJ noted that the testimony of Mimms' brother aligned with medical assessments. [Filing No. 15-2, at ECF p. 31.] Thus, the ALJ considered a wide range of factors in assessing Mimms' credibility and the Court finds there is sufficient support for the ALJ's credibility determination. Nevertheless, the ALJ will have another opportunity to examine Mimms' credibility on remand.

**IV.     Conclusion**

The Appeals Council committed reversible error when it refused to consider Mimms' additional evidence in his appeal. For this reason, Mimms' brief in support of appeal [Filing No.

18] is granted. The matter must be reversed and remanded to the Commissioner of Social Security under sentence four of 20 C.F.R. § 405(g). On remand, the ALJ should consider Mimms' claims of disability in light of the additional evidence submitted to the Appeals Council.

    Date:

Distribution:

Theodore F. Smith, Jr.
THEODORE F. SMITH JR. PC
tsmith@tedsmithlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov